AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Kansas



<table>
<tr><td>In the Matter of the Search of<br><i>(Briefly describe the property to be searched<br>or identify the person by name and address)</i><br><br>Three cellular telephones, more fully described on Attachment A,<br>which were seized on September 17, 2020, and which are in the<br>custody of FBI - Wichita Resident Office, Wichita, Kansas</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No. 20-M-<i>6124</i> -01-KGG</td></tr>
</table>

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Three cellular telephones, more fully described on Attachment A, which were seized on September 17, 2020, and which are in the custody of FBI - Wichita Resident Office, Wichita, Kansas

located in the _____ District of _____Kansas_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1071 | Concealing a person from arrest |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Cameron Heath, Special Agent, Federal Bureau of Investigation
_____
*Printed name and title*

**Telephonically**
Sworn to before me and signed ~~in my presence.~~

Date: Sept. 21, 2020

_____
*Judge's signature*

City and state:  Wichita, Kansas

Honorable Kenneth G. Gale, U.S. Magistrate Judge
_____
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS



IN THE MATTER OF THE SEARCH OF

BLACK TCL CELLULAR TELEPHONE,
IMEI 015293006476745

GRAY ALCATEL CELLULAR
TELEPHONE, IMEI 015400006610369

GRAY ALCATEL CELLULAR
TELEPHONE, IMEI 015610000748110

CURRENTLY IN THE POSSESSION
OF THE FBI - WICHITA RESIDENT
AGENCY

Case No. 20-m-6124-01-KGG

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEARCH WARRANT

I, Cameron M. Heath, Jr., Special Agent of the Federal Bureau of Investigation, being duly sworn, do hereby depose and state:

## INTRODUCTION AND AGENT BACKGROUND

1)     I have been a Special Agent (SA) of the FBI since September 2015, and I am currently assigned to the Kansas City Division, Wichita Resident Agency (WRA) of the FBI. I am specifically assigned to the Safe Streets Task Force (SSTF). As a FBI Special Agent assigned to the SSTF my official duties include, but are not limited to investigation into gangs, criminal violations of the Controlled Substances Act, organized crime, and ongoing criminal enterprises. During my time as a FBI Special Agent, I have participated in numerous gang and controlled substance violation investigations. While conducting the investigations, I have authored T-III affidavits, pen registers, Global Positioning System (GPS) cellular telephone tracking warrants, and social media warrants. I have

conducted extensive interviews. controlled narcotics purchases, surveillances, search warrants and arrest warrants.  My training and experience have involved, among other things, (a) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealment of proceeds of drug trafficking; (b) surveillance; and (c) analysis of documentary and physical evidence.  Based on my training and experience as a FBI Special Agent, I have become familiar with the manner in which narcotics traffickers conduct their drug-related businesses, including the methods employed by narcotics dealers to import and distribute narcotics, and their use of coded language to refer to narcotics, drug proceeds, and other aspects of narcotics trafficking.  I have been personally involved in numerous investigations involving the unlawful possession, manufacture, distribution. and smuggling of controlled substances.

2)   As a Federal Agent, your affiant is authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3)   This affidavit is in support of an application for a search warrant for three cellular telephones.  The first is a black in color, TCL cellular telephone, model A501DL, with an IMEI 015293006476745.  The second is a gray in color, ALCATEL cellular telephone, model A405DL. with an IMEI of 015400006610369.  The third is a gray in color, ALCATEL cellular telephone, model 4052C. with an IMEI of 015610000748110.  The three aforementioned cellular telephones are currently located at the Wichita Resident Agency, located at 301 North Main Street, Suite 450, Wichita. Kansas.

4)      Based upon the information contained in this affidavit. I have reason to believe that on said devices there is now located evidence, described in Attachment A, of violations of Title 18, United States Code (U.S.C.), Section 1071.

5)      The information in this affidavit is information known to me as a result of my participation in this investigation or is information that has been communicated to me by other law enforcement investigators and witnesses involved in this investigation. Since this affidavit is being submitted for the limited purpose of supporting a search warrant, I have not included all the facts known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. Section 1071, are presently located on the devices.

## PROBABLE CAUSE

6) On February 28, 2020, SA Cameron Heath received a federal arrest warrant through the District of Kansas, for DORZEE HILL, which was under case number 6:20-CR-10028-EFM-06. HILL had been charged by indictment, for three counts of 21 U.S.C. Section 846, and for eight counts of 21 U.S.C. Section 843(b). From February 28, 2020, until HILL's arrest on September 17, 2020. HILL had remained a fugitive from justice, as HILL had not been arrested, despite multiple efforts by law enforcement to locate and arrest him.

7) In August 2020, agents of the FBI learned that HILL had used cellular telephone number (316) 461-3424, which was a number serviced by T-MOBILE. On September 1, 2020, a GPS ping search warrant for phone number (316) 461-3424 was signed by Federal Magistrate Judge, Kenneth Gale, which was under case number 20-M-6120-KGG. On September 4, 2020, agents of the FBI began receiving location data for phone number (316)

461-3424, every 15 minutes regarding the location of cellular telephone (316) 461-3424. From September 4, 2020, through September 15, 2020, the GPS location pings for (316) 461-3424 had continuously been located at 2713 N. Piatt Circle, Wichita, KS, which is an address resided by Taharri Bryant and Queentaharra Ingram. Both BRYANT and INGRAM are relatives and close associates of HILL's. On September 15, 2020, at approximately 5:24 p.m., SA Heath received a GPS location ping that was not located at 2713 N. Piatt Circle, Wichita, KS. After receiving the first GPS location ping that wasn't located at 2713 N. Piatt Circle, Wichita, KS, SA Heath reviewed surveillance video from a covert camera that had been placed in the area of 2713 N. Piatt Circle, Wichita, KS for the purpose of watching vehicular and foot traffic coming to and from 2713 N. Piatt Circle. During the review, and on September 15, 2020, at approximately 5:08 p.m., SA Heath observed two black males exit the garage of 2713 N. Piatt Circle and enter a reddish four door sedan. The black male who entered the driver's seat was wearing a gray shirt and blue jeans. The black male who entered the front right passenger seat was wearing a white t-shirt and black pants and appeared to be carrying a bag in his hands. SA Heath also observed two females standing in the garage of 2713 N. Piatt Circle and they watched the two black males depart in the reddish sedan. The two black females matched the description of BRYANT and INGRAM. From September 16, 2020, at approximately 1:39 a.m., through approximately 7:00 a.m., on September 17, 2020, the GPS location pings were located at the Riverwalk Apartments, located at 2723 Topeka Street, Wichita, KS. The GPS location pings were located on the west side of building 2723.

8)      Due to the GPS location pings of (316) 461-3424 being located on the west side of building 2723 of the Riverwalk Apartments, located at 2723 Topeka Street, Wichita, KS,

on September 16, 2020, agents of the FBI conducted a surveillance operation at said location. During the surveillance operation, multiple investigators observed that someone within apartment 302 was continuously peaking or looking out the blinds of the apartment. In addition, on multiple occasions, investigators observed a black male come and go from apartment 302, who was not HILL. The black male who was observed coming and going from apartment 302 was Clifton Parks III. PARKS is a known associate of HILL's. When PARKS would depart apartment 302, the GPS location pings of (316) 461-3424 would remain at said apartment.

9)     On September 17, 2020, at approximately 7:00 a.m., agents of the FBI made the decision to knock and announce their presence at apartment 302 of building 2723 at the Riverwalk Apartments, as it was believed that HILL was located within the apartment due to the GPS location pings of (316) 461-3424 being located at said location. SA Cameron Heath conducted the knock and announce of the FBI's presence and requested that HILL exit the apartment. After knocking and announcing several times, a male voice inside the apartment could be heard stating, "I'm coming out and I have my hands up," at which point the door to apartment 302 opened and a black male was observed. SA Heath recognized the black male to be HILL, at which point SA Heath placed handcuffs on HILL's wrists behind his back and told him he was under arrest for an outstanding federal arrest warrant. At the time of HILL's arrest, HILL was wearing a white t-shirt and black pants. SA Heath observed that HILL had lost a substantial amount of weight since the last time HILL had been observed by SA Heath.

10)    HILL told agents that no-one else was in the apartment but him, which was later found to be true. HILL told agents that he had a blue bag in his room and requested agents to get

the bag for him.  Agents entered the apartment and conducted a protective sweep and during the protective sweep, there were three cellular telephones laying on the bedroom floor, located in the same room as the blue duffel bag HILL had requested agents retrieve for him.  All three of the phones were powered on and were placed next to a pillow and blanket on the floor.  All three of the phones were seized, as they were believed to belong to HILL, as they were all powered on and were in the same bedroom that the blue duffel bag was.  In addition, and to determine if one of the three cellular telephones was (316) 461-3424, SA Jonathan Davis called (316) 461-3424, at which point the black TCL cellular telephone, model A501DL, with an IMEI 015293006476745 began ringing.

11)    Based upon the aforementioned facts, it is my belief that HILL had assistance from known and other unknown individuals as he had been a fugitive from justice for approximately six months.  In March 2020, known associates of HILL attacked a witness in the case.  As a result of that attack, a search of INGRAM's phone was ultimately conducted.  There were communications stating INGRAM provided HILL money on March 4, 2020.  Code names were used such as "Drizzle" and "Doodle" when discussing a male between INGRAM, BRYANT and HILL's girlfriend, Breonte Hadley-Ponds.  Those discussions included when they could talk to and see this male.  There was also a note, written by INGRAM, indicating that meeting "him" would always be at PONDS residence.  Additionally, copies of the Indictment were sent from INGRAM to other individuals.  Since that time, INGRAM has been seen posting on Facebook regarding HILL evading arrest as recently as September 2020.

12)   In the early morning hours of September 17, 2020, prior to HILL's arrest, in a conversation with SA Heath, BRYANT indicated that HILL had been residing in her residence recently.

13)   Based upon the investigation of HILL, I believe that BRYANT and INGRAM had participated in the concealment of HILL from arrest and that they knew there was a warrant for his arrest. In addition, SA Heath had a "wanted poster" created for his arrest and the FBI offered an award for his arrest in March 2020, after several unsuccessful attempts to locate him were made. Of the many investigative techniques that had been employed to previously locate him, HILL's "wanted poster" and the FBI reward for his arrest had been disseminated multiple times via social media posts and were displayed on digital billboards around the Wichita, KS metropolitan area. With that, I believe that there was a substantial probability that HILL and associates of HILL in the Wichita, KS area knew that HILL was a fugitive from justice, and that HILL's associates had assisted in the concealment of HILL from arrest.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

14)   Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. This information can sometimes be recovered with forensics tools.

15)   There is probable cause to believe that things that were once stored on the devices, may still be stored there, for at least the following reasons:

   a.   Based on my knowledge, training, and experience, I know that cellphones are essentially mini computers. Like computers, files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools.

This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.

16) *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that forensic electronic evidence might be on the devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

17)   *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device(s) consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

18)   *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

19)   Based on the aforementioned factual information, I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the devices described in Attachment A to seek the items described in Attachment B.  Your affiant respectfully submits that there is probable cause to believe that evidence of criminal offenses, namely, violations of 18 U.S.C. § 1071, is located in or on the devices described above, and this evidence, listed in Attachment B to this affidavit, which is incorporated herein by reference, is contraband, the fruits of crime, or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.

20)   Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

Cameron M. Heath, Jr., Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before telephonically me on this $\underline{21}^{st}$ day of September 2020.

HONORABLE KENNETH G. GALE
United States Magistrate Judge
District of Kansas

## ATTACHMENT A

The items to be searched are as follows:

a) Black TCL cellular telephone, model A501DL, with an IMEI 015293006476745, that was seized from building 2723, apartment 302, of the Riverwalk Apartments, located at 2723 Topeka Street, Wichita, KS, on September 17, 2020.

b) Gray ALCATEL cellular telephone, model A405DL, with an IMEI of 015400006610369, that was seized from building 2723, apartment 302, of the Riverwalk Apartments, located at 2723 Topeka Street, Wichita, KS, on September 17, 2020.

c) Gray ALCATEL cellular telephone, model 4052C, with an IMEI of 015610000748110, that was seized from building 2723, apartment 302, of the Riverwalk Apartments, located at 2723 Topeka Street, Wichita, KS, on September 17, 2020.

The aforementioned devices are currently located in the office of the FBI – Wichita

Resident Agency, located at 301 North Main Street, Suite 450, Wichita, Kansas.

This warrant authorizes the forensic examination of the devices for the purpose of

identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be seized

1.      All records and data on the devices described in Attachment A that relate to violations of

Title 18, U.S.C. § 1071, including:

       a.   Data or content tending to show the user of the device;

       b.   Data or content relating to planning, coordinating, researching, or admitting involvement in the Concealment of HILL from arrest, including but not limited to text messages, email messages, instant messages, browser history, and mapping functions;

       c.   Data or content relating to showing or depicting fruits of the crime, including but not limited to text messages, email messages, instant messages, image/video files, internet history, account or login information associated with Facebook or other social media mediums;

       d.   Data or content tending to show previous locations associated with the device, including GPS coordinates, map searches, reservations, receipts.